JOHN J. CONNLY *et al.* Exrs. and Trs. *vs.* ROBERT BERNARD BANIGAN McELROY *et al.*

JUNE 25, 1924.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

SWEETLAND, C. J.   This is a bill in equity brought by the executors of and trustees under the will of Mary A. McElroy, late of Cumberland, deceased, asking for a construction of the fiftieth clause of said will, and for instructions relative thereto.

In the Superior Court the cause being ready for hearing for final decree was under the provisions of the statute certified to this court for determination.

By the fiftieth clause the testatrix bequeathed to trustees her estate in Cumberland known as Macsknoll Farm, in trust, among other things, "To take possession of, hold and manage the same, to pay the taxes, assessments, insurance premiums and expense of repairs of all of said real and personal property, and in addition to such expense to pay the compensation of such agents, servants and employees as may be necessary for the safe keeping and upkeep of all of said premises and the property thereon, to such extent as my trustees shall deem advisable, and to permit my said son, John Holt McElroy, and my said faithful friend Elizabeth Keenan, to occupy the house, used by me as my residence at said Macsknoll Farm, as a residence free from rent for and during the natural life of my son John, or until his removal from the State of Rhode Island.   And I hereby authorize my said trustees, in their discretion, to make such expenditures as they may deem advisable in connection with keeping said house suitable as such residence."   With regard to the provisions of the fiftieth clause quoted above the trustees ask for instructions as to whether or not—

"1. they are authorized to use the funds of said estate to the extent of providing and furnishing John H. McElroy with food, services of household servants and their food, heat, lighting and other advantages afforded him by said testatrix during her life

"2. they are authorized to make like expenditures for Elizabeth Keenan

"3. they are authorized to keep and maintain any part of Macsknoll Farm or the livestock or buildings thereon for the use of said John Holt McElroy and said Elizabeth Keenan, or either of them, in connection with keeping said house suitable as such residence

"4. if the above questions or any of them are answered in the affirmative, whether the expense shall be paid out of the funds, principal and income, if any, derived from the trust created by the fiftieth clause of said will relating to the Macsknoll Farm property or from the funds, principal and income, of the trust of the residuary estate, created by said fiftieth and the fifty-first clause of said will, and if it be held that the said expense shall be paid out of the trust created by said fiftieth clause of said will, whether, if the funds of same are insufficient to meet such expense, the executors and trustees may use and apply the funds of said residuary trust, both principal and income, for such purpose"

It appeared in evidence that this farm in Cumberland was the principal place of residence of the testatrix; that she expended large sums in its upkeep and that during the periods when she resided there her household expenses were very large. During the latter part of her life, John H. McElroy resided with his mother when she was at the Cumberland farm and as a member of her household he shared in the material comforts of her expensive household. At the time of his mother's death, in 1923, he was about thirty-one years of age and of good health. Elizabeth Keenan had been a servant employed by the testatrix for many years.

The first point upon which the trustees seek instructions raises the question as to whether it was the intention of the

testatrix to authorize the trustees to continue to maintain the household and housekeeping conducted by her at the Cumberland farm to an extent necessary to provide her son John with all the advantages which she had afforded him there during her lifetime. In addition to indications of her intent to be derived from the natural import of the language employed by the testatrix negativing such intention, a consideration of the circumstances of the estate and the other provisions of the will indicates that such was not her intention. She had maintained a very expensive summer home at the farm, in the comfort and advantages of which she had freely permitted her son to share. Although her other expenditures were large, those of the farm to a great degree were responsible for the prodigal total. Her expenditures for years have been in excess of her income, for the last few years of her life amounting to three times her income, and she had drawn heavily upon the principal of her estate. The farm had not been conducted by her for profit and she could not have contemplated that the trustees would be able to operate it to any considerable financial advantage. It is noticeable that in the provisions in regard to the execution of the trust in the farm the will makes no provision for the disposition of income. The assumption is warranted that the testatrix did not regard this trust as one of income producing property, so long at least as the main portion of the *corpus* of the trust was permitted to remain in the form of farm land and buildings. The payment of taxes, assessments, insurance premiums, the expenses of repairs upon the real and personal property connected with the farm, the compensation of agents and servants in the safe-keeping and upkeep of the property, the trustees' plain duty of keeping the dwelling house suitable as a residence for John and Miss Keenan, will undoubtedly result in a yearly deficit in this unproductive trust property as it now exists.

The trustees of the farm property are also the trustees named by the testatrix in two trusts created in the residuary

estate. We think it is the duty of the trustees to treat the trusts as distinct and, as far as possible, in accordance with its proper execution, to have each trust pay the cost of its own administration. *Martin, Petitioner*, 25 R. I. 1. In this case we find a situation of three trusts, one of which the testatrix must have regarded as largely unproductive, with the probability of an annual deficiency in income. We are of the opinion that the circumstances warrant the finding of an intention in the testatrix that any lack of income in the farm trust should be made up equally out of the income of the residuary trusts. We are strongly of the opinion, however, that, in the circumstances of the case, in the absence of explicit direction to that éffect, the testatrix cannot reasonably be found to have intended to place provisions in the farm trust, the execution of which would require that the income of either of the residuary trusts be drawn upon to such an extent as to imperil the carrying out of her clearly expressed intention with regard to it. In the first of the two trusts created in the residuary estate, being a trust in one-half of the estate, the testatrix provides for the payment of annuities to her children, including John, to the amount of $8,400 per year. The only provision for the payment of these annuities is that they shall be paid from the net income of the trust. If the trustees are to continue the household of the testatrix for the benefit of John and Miss Keenan, for the purpose of furnishing John with the "advantages afforded him by said testatrix during her life" a burden will be thrown upon this trust in one-half of the residuary estate, which, in addition to the expenses of its administration, will make it impossible to pay the annuities in full from its net income. In order that our determination may not be misinterpreted regarding the sources from which the expenses of the farm trust may be paid, we wish to say in passing that the trustees are authorized "at any time that they may deem it desirable so to do to sell, lease, mortgage, or otherwise transfer or convey on such terms and conditions as to them shall seem advis-

able, any part or parts" of said farm "as shall not be required for residential purposes as aforesaid." A continued deficiency in income of the farm trust might most properly move the discretion given to the trustees to convert that portion of the farm not required for residential purposes into income producing assets.

The parties to this proceeding who favor an affirmative answer to the first three questions propounded to us have strongly urged the circumstances of the case as supporting their position. We have therefore considered the circumstances at length and have reached the foregoing conclusion adverse to their claim from the circumstances in connection with the other provisions of the will.

Testimony was presented before the master appointed in the Superior Court as to declarations made by the testatrix in her lifetime regarding her intentions concerning this gift to her son John. This testimony cannot be considered. No latent ambiguity appears in the language of the provision which warrants the introduction of parol evidence as to the intentions of the testatrix. *R. I. Hospital Trust Co.* v. *Bradley*, 41 R. I. 174; *Lewis* v. *Douglass*, 14 R. I. 604; *Wood* v. *Hammond*, 16 R. I. 98. We must determine what her intentions were from an examination of the language of the provision with such assistance as may be afforded by a consideration of the circumstances surrounding the case. *Perry* v. *Brown*, 34 R. I. 203.

It is urged that the language of the provision in the fiftieth clause of the will in favor of John and Miss Keenan amounts to a direction to the trustees to maintain a home for them in the house at the Cumberland farm. A number of cases have been cited from other jurisdictions in which a direction to permit a beneficiary to continue to have a home in the testator's dwelling house have, in view of the circumstances, been construed to indicate a benevolent intention on the part of the testator to include in the gift sustenance for the beneficiary, the cost of housekeeping, and the supply of those things which constitute a home. The direction

before us is not that the trustees shall provide a home for the beneficiaries, but permit them to occupy the house as a residence, free from rent, during the life of John or until his removal from the State. The clause also authorizes such expenditures as the trustees may deem advisable in connection with keeping the house suitable as a residence for these two persons.

The word "residence" is not in its ordinary meaning synonymous with home. It denotes a place of abode and is not an appropriate word to designate the housekeeping, the supply of provisions and the various incidents connected with maintaining a home. The language of the clause in its ordinary sense merely provides that permission shall be given to use the house as a dwelling place free from rent. It does not admit of an implication that any greater benefit was intended.

The will was evidently drawn with care to set forth the intentions of the testatrix. The various provisions are explicitly stated. The extensive powers and duties of the trustees in the administration of the trust are set out with particularity. From all this care and particularity we may well assume that, if the testatrix intended in connection with this provision for the beneficiaries, to supply them with food, household servants and the food of such servants, and with all the other advantages afforded by her to her son John in her lifetime, neither she nor the scrivener would have left the intention of so extensive a benefit to be inferred from a forced interpretation of the word "residence," which is inapt for the purpose.

Our answer to the first and second questions contained in the request for instructions is in the negative.

Our answer to the third question so far as it relates to the keeping of livestock for the use of the beneficiaries is in the negative. The only provision for the benefit of John and Miss Keenan in connection with the farm is that they shall be permitted to occupy the house. There is nothing to indicate an intention that any other portion of the farm is

to be operated or maintained for their benefit, furthermore specific authority is given to the trustees to dispose of such "real and personal property as shall not be required for residential purposes as aforesaid." We conclude that the authority in the trustees to keep the house suitable as a residence for the beneficiary did not authorize and empower the trustees to keep and maintain any other part of the farm or the buildings thereon for their use, save such parts of the farm and buildings, convenient to be used in connection with the dwelling house, as may properly be considered within its curtilage.

The fourth question is only propounded in the event that our answers to the first three, or to either of the first three, are in the affirmative. Therefore it does not require consideration.

On July 7, 1924, at 9 o'clock a. m. Eastern standard time, the parties may present a form of decree in accordance with this opinion.

*Lee & McCanna, Thomas Z. Lee*, for complainants.
*John J. Mee* for John H. McElroy.
*Fitzgerald & Higgins, William H. Camfield*, for Elizabeth Keenan.
*Swan, Keeney & Smith*, for respondents Blair.
*Leo H. Leary, Sr.*, for Leo H. Leary, Jr.